12:12PM

1                  **UNITED STATES DISTRICT COURT**
                  **WESTERN DISTRICT OF NEW YORK**

2

3   _____

      **UNITED STATES OF AMERICA,**

4                           Case No. 1:22-cr-86 (LJV)
              Plaintiff,           1:24-cr-31 (LJV)

5   vs.                          May 29, 2024

6

      **JUSTIN HALL,**

7   _____Defendant._____

8

9                 **TRANSCRIPT OF SENTENCING**

10       **BEFORE THE HONORABLE LAWRENCE J. VILARDO**
              **UNITED STATES DISTRICT JUDGE**

11

    **APPEARANCES:**           **TRINI E. ROSS, UNITED STATES ATTORNEY**

12                    **BY: GARRETT S. FITZSIMMONS, ESQ.**
                    Assistant United States Attorney

13                    138 Delaware Avenue
                    Federal Centre

14                    Buffalo, New York 14203
                    For the Plaintiff

15

                    **LIPSITZ GREEN SCIME CAMBRIA LLP**

16                    **BY: BARRY NELSON COVERT, ESQ.**
                    42 Delaware Avenue

17                    Suite 120
                    Buffalo, New York 14203

18                    For the Defendant

19   **PRESENT:**             **APRIL L. KELLY, USA Paralegal**

20   **PROBATION:**         **LISA B. FERRARO, USPO**

21   **COURT DEPUTY CLERK:**  **COLLEEN M. DEMMA**

22   **COURT REPORTER:**     **ANN MEISSNER SAWYER, FCRR, RPR, CRR**
                    Robert H. Jackson Courthouse

23                    2 Niagara Square
                    Buffalo, New York 14202

24                    Ann_Sawyer@nywd.uscourts.gov

25

| 12:30PM | 1 | (Proceedings commenced at 12:30 p.m.) |
| 12:30PM | 2 | THE CLERK:  All rise.  United States District Court |
| 12:30PM | 3 | for the Western District of New York is now in session, the |
| 12:30PM | 4 | Honorable Lawrence J. Vilardo presiding. |
| 12:30PM | 5 | THE COURT:  Please be seated. |
| 12:30PM | 6 | THE CLERK:  22-CR-86 and 24-CR-31, United States of |
| 12:31PM | 7 | America versus Justin Hall. |
| 12:31PM | 8 | Assistant United States Attorney Garrett Fitzsimmons, |
| 12:31PM | 9 | and paralegal April Kelly, appearing on behalf of the |
| 12:31PM | 10 | government. |
| 12:31PM | 11 | Attorney Barry Covert appearing with defendant. |
| 12:31PM | 12 | Defendant is present. |
| 12:31PM | 13 | Also present is U.S. Probation Officer Lisa Ferraro. |
| 12:31PM | 14 | This is the date set for sentencing. |
| 12:31PM | 15 | THE COURT:  Good afternoon, everybody. |
| 12:31PM | 16 | ALL PARTIES:  Good afternoon, Your Honor. |
| 12:31PM | 17 | THE COURT:  Mr. Hall is before the Court for |
| 12:31PM | 18 | sentencing on his previous pleas of guilty to Count 1 of the |
| 12:31PM | 19 | superseding indictment in Western District of New York, |
| 12:31PM | 20 | 22-CR-86, charging that he possessed a firearm when he was |
| 12:31PM | 21 | prohibited from doing so because he had a prior domestic |
| 12:31PM | 22 | violence criminal conviction in violation of Title 18, United |
| 12:31PM | 23 | States Code, Section 922(g)(9) and 924(a)(2), and Count 1 of |
| 12:31PM | 24 | the indictment in the District of Nevada, 22-CR-32, |
| 12:31PM | 25 | transferred to this district as 24-CR-31, and that also |

12:32PM    1    charged that he possessed a firearm when he was prohibited

12:32PM    2    from doing so because he had a prior domestic violence

12:32PM    3    criminal conviction in violation of 18, United States Code,

12:32PM    4    Section 922(g)(9) and 924(a)(2).

12:32PM    5         We're going to begin with some questions that I have

12:32PM    6    for the lawyers and for you, Mr. Hall, about the presentence

12:32PM    7    investigation report.

12:32PM    8         I then am going to make sure that I've received and

12:32PM    9    read all the sentencing-related submissions.

12:32PM   10         After that, I plan to make some findings of fact and

12:32PM   11    calculate the applicable sentencing guidelines range.  And

12:32PM   12    then before I state the sentence, I'm going to give the

12:32PM   13    lawyers and you an opportunity to talk to me about anything

12:32PM   14    anyone thinks is relevant to sentencing.

12:32PM   15         So are there any questions before we begin from the

12:32PM   16    government?

12:32PM   17         MR. FITZSIMMONS:  No, Your Honor.

12:32PM   18         THE COURT:  From the defense?

12:32PM   19         MR. COVERT:  No, Your Honor.

12:32PM   20         THE COURT:  Mr. Covert, have you had enough time to

12:32PM   21    read the presentence report prepared on April 10th, 2024,

12:32PM   22    revised on April 26th, 2024, and finally revised and filed

12:32PM   23    April 29, 2024, and to review it with your client?

12:32PM   24         MR. COVERT:  I have.

12:32PM   25         THE COURT:  And, Ms. Ferraro, there were no revisions

| | | |
|---|---|---|
| 12:33PM | 1 | or updates to the presentence report that was filed on |
| 12:33PM | 2 | April 29th, 2024; is that correct? |
| 12:33PM | 3 | USPO FERRARO:  That's correct, Your Honor. |
| 12:33PM | 4 | THE COURT:  Mr. Covert, did you explain the contents |
| 12:33PM | 5 | of the report to Mr. Hall? |
| 12:33PM | 6 | MR. COVERT:  We did. |
| 12:33PM | 7 | THE COURT:  Do you have any concerns about his |
| 12:33PM | 8 | ability to understand it? |
| 12:33PM | 9 | MR. COVERT:  None at all. |
| 12:33PM | 10 | THE COURT:  Mr. Hall, did you receive a copy of the |
| 12:33PM | 11 | presentence report prepared on April 10th, revised on |
| 12:33PM | 12 | April 26th, and then finally revised and filed on April 29th, |
| 12:33PM | 13 | 2024. |
| 12:33PM | 14 | THE DEFENDANT:  I did, sir. |
| 12:33PM | 15 | THE COURT:  Did your attorney explain it to you? |
| 12:33PM | 16 | THE DEFENDANT:  Yes, sir. |
| 12:33PM | 17 | THE COURT:  Do you understand it? |
| 12:33PM | 18 | THE DEFENDANT:  Fully. |
| 12:33PM | 19 | THE COURT:  Do you have any questions about it? |
| 12:33PM | 20 | THE DEFENDANT:  No, sir. |
| 12:33PM | 21 | THE COURT:  Do you need more time to talk to |
| 12:33PM | 22 | Mr. Covert about it or to read it? |
| 12:33PM | 23 | THE DEFENDANT:  No, sir. |
| 12:33PM | 24 | THE COURT:  Okay.  Mr. Covert, do you want to contest |
| 12:33PM | 25 | or change anything in the report? |

| | | |
|---|---|---|
| 12:33PM | 1 | MR. COVERT:  No. |
| 12:33PM | 2 | THE COURT:  And that includes both the facts and the |
| 12:33PM | 3 | guideline calculation, correct? |
| 12:33PM | 4 | MR. COVERT:  That's correct. |
| 12:33PM | 5 | THE COURT:  Mr. Hall, do you want to contest or |
| 12:33PM | 6 | change in anything in the report? |
| 12:33PM | 7 | THE DEFENDANT:  No, sir. |
| 12:33PM | 8 | THE COURT:  And, Mr. Fitzsimmons, does the government |
| 12:33PM | 9 | want to contest or change anything in the report? |
| 12:33PM | 10 | MR. FITZSIMMONS:  No, Your Honor. |
| 12:33PM | 11 | THE COURT:  And that includes both the facts and the |
| 12:33PM | 12 | guideline calculation, correct? |
| 12:33PM | 13 | MR. FITZSIMMONS:  Correct. |
| 12:33PM | 14 | THE COURT:  Mr. Covert, I've received and reviewed |
| 12:34PM | 15 | the defendant's statement with respect to sentencing factors, |
| 12:34PM | 16 | and the defendant's sentencing memorandum, that attached: |
| 12:34PM | 17 | His letter to the Court; |
| 12:34PM | 18 | It attached a 2017 domestic violence judgment of |
| 12:34PM | 19 | conviction and order from the Court from Virginia Township, |
| 12:34PM | 20 | Nevada; |
| 12:34PM | 21 | An annotated version of the indictment in United |
| 12:34PM | 22 | States versus Hall in the District of Nevada; |
| 12:34PM | 23 | A 2016 letter from Amanda Barrow, indicating that she |
| 12:34PM | 24 | did not have a domestic dispute with Mr. Hall; |
| 12:34PM | 25 | Mr. Hall's 2024 certificate of graduation from the |

| | | |
|---|---|---|
| 12:34PM | 1 | Cattaraugus County Action Inside/Out Dads and Money Smarts |
| 12:34PM | 2 | program; and |
| 12:34PM | 3 | A legal document that was sealed by Mr. Hall and |
| 12:34PM | 4 | Russell J. Gould. |
| 12:34PM | 5 | And then letters written on Mr. Hall's behalf by: |
| 12:34PM | 6 | Barbara Restad, his aunt; |
| 12:34PM | 7 | Gordon Gray, who's known him for 20 years; |
| 12:34PM | 8 | Aaron Resavage, who's known him for a couple years; |
| 12:34PM | 9 | Sheri Van Ness, who's known him for many years; |
| 12:35PM | 10 | Tawnya MacLeod, who's also known him for many years. |
| 12:35PM | 11 | And then there was also a letter from Monica |
| 12:35PM | 12 | Goncalves.  Was that -- was that intentionally attached to |
| 12:35PM | 13 | this? |
| 12:35PM | 14 | MR. COVERT:  Yes. |
| 12:35PM | 15 | THE COURT:  Tell me why that -- what the connection |
| 12:35PM | 16 | of that is. |
| 12:35PM | 17 | MR. COVERT:  I believe that that's the letter that |
| 12:35PM | 18 | explains the issues in relation to Tawnya MacLeod's son that |
| 12:35PM | 19 | Tawnya MacLeod would like my client to be present and assist |
| 12:35PM | 20 | her in raising that child because he has those issues, is my |
| 12:35PM | 21 | understanding of it, Your Honor. |
| 12:35PM | 22 | THE COURT:  Oh, okay.  I see.  Okay.  Okay.  Yeah. |
| 12:35PM | 23 | This is the child who Ms. MacLeod was with her in |
| 12:35PM | 24 | Massachusetts? |
| 12:35PM | 25 | MR. COVERT:  In Marlboro, Massachusetts. |

| | | |
|---|---|---|
| 12:35PM | 1 | THE COURT:  Got it. |
| 12:35PM | 2 | MR. COVERT:  Correct, Your Honor. |
| 12:35PM | 3 | THE COURT:  Now I understand. |
| 12:35PM | 4 | MR. COVERT:  Sorry for any confusion. |
| 12:35PM | 5 | THE COURT:  No, no, that's okay.  I read it, and it |
| 12:35PM | 6 | just didn't register with me, but -- |
| 12:35PM | 7 | MR. COVERT:  Same when I read it. |
| 12:35PM | 8 | THE COURT:  When I look at it again, and I see the |
| 12:36PM | 9 | name Tawnya MacLeod -- |
| 12:36PM | 10 | MR. COVERT:  And the red paper doesn't help. |
| 12:36PM | 11 | THE COURT:  Well, I was able to read it.  I was able |
| 12:36PM | 12 | to read it.  So, okay.  So, is that everything? |
| 12:36PM | 13 | MR. COVERT:  It is, Your Honor. |
| 12:36PM | 14 | THE COURT:  And is there anything else you'd like to |
| 12:36PM | 15 | submit in writing? |
| 12:36PM | 16 | MR. COVERT:  No, Your Honor. |
| 12:36PM | 17 | THE COURT:  Mr. Fitzsimmons, I've received the |
| 12:36PM | 18 | government's statement with respect to sentencing factors, and |
| 12:36PM | 19 | its memorandum of law in opposition to Mr. Hall's sentencing |
| 12:36PM | 20 | submissions, with attachments A through J; is that everything? |
| 12:36PM | 21 | MR. FITZSIMMONS:  Yes, Your Honor. |
| 12:36PM | 22 | THE COURT:  There anything else the government would |
| 12:36PM | 23 | like to submit in writing? |
| 12:36PM | 24 | MR. FITZSIMMONS:  No, Your Honor. |
| 12:36PM | 25 | THE COURT:  Finally, consistent with Federal Rule of |

| | | |
|---|---|---|
| 12:36PM | 1 | Criminal Procedure 32(e)(3) as interpreted by the D.C. Circuit |
| 12:36PM | 2 | in McIlwain, have both sides been given access to the sealed |
| 12:36PM | 3 | sentencing recommendation that was filed on May 15th, 2024? |
| 12:36PM | 4 | Mr. Covert? |
| 12:36PM | 5 | MR. COVERT:  Yes, Your Honor. |
| 12:36PM | 6 | THE COURT:  Mr. Fitzsimmons? |
| 12:36PM | 7 | MR. FITZSIMMONS:  Yes. |
| 12:36PM | 8 | THE COURT:  I previously accepted the defendant's |
| 12:36PM | 9 | pleas of guilty to Count 1 of the superseding indictment in |
| 12:36PM | 10 | Western District of New York 22-CR-86, as well as Count 1 of |
| 12:36PM | 11 | the indictment in the District of Nevada 22-CR-32, transferred |
| 12:37PM | 12 | to this District as 24-CR-31, each charging that he possessed |
| 12:37PM | 13 | a firearm when he was prohibited from doing so because he had |
| 12:37PM | 14 | a prior domestic violence conviction in violence -- a prior |
| 12:37PM | 15 | domestic violence criminal conviction in violation of |
| 12:37PM | 16 | Title 18, United States Code, Section 922(g)(9) and 924(a)(2). |
| 12:37PM | 17 | At that time, I deferred acceptance of the plea |
| 12:37PM | 18 | agreement.  I now accept the terms and conditions of the plea |
| 12:37PM | 19 | agreement that was signed on February 16th, 2024, and the |
| 12:37PM | 20 | judgment and sentence will be consistent with it. |
| 12:37PM | 21 | I note that in the plea agreement, the government |
| 12:37PM | 22 | agreed to move to dismiss the open count of the indictment |
| 12:37PM | 23 | pending against the defendant in 22-CR-86.  So I also find |
| 12:37PM | 24 | that the charges to which the defendant pleaded guilty, that |
| 12:37PM | 25 | is Count 1 of each of the indictments, adequately reflects the |

USA v Justin Hall - Sentencing - 5/29/24

9

| | | |
|---|---|---|
| 12:37PM | 1 | seriousness of the actual offense behavior, and that accepting |
| 12:37PM | 2 | the agreement will not undermine the statutory purposes of |
| 12:37PM | 3 | sentencing or the guidelines. |
| 12:37PM | 4 | The dismissed count involves the transportation of |
| 12:38PM | 5 | firearms and ammunition in the Western District of New York |
| 12:38PM | 6 | case while the defendant was charged in Nevada, and all the |
| 12:38PM | 7 | conduct involved in that count is accounted for in the |
| 12:38PM | 8 | guidelines calculation.  So the plea agreement is consistent |
| 12:38PM | 9 | with both the guidelines and the statutory purposes of |
| 12:38PM | 10 | sentencing. |
| 12:38PM | 11 | The defendant and the government have both filed |
| 12:38PM | 12 | statements with respect to sentencing factors, and both have |
| 12:38PM | 13 | accepted the United States Probation and Pretrial Service |
| 12:38PM | 14 | Office's presentence report. |
| 12:38PM | 15 | Based on the parties' submissions and representations |
| 12:38PM | 16 | today in court, there are no disputes about the facts included |
| 12:38PM | 17 | in the presentence report. |
| 12:38PM | 18 | I've reviewed that report as well.  Based on my |
| 12:38PM | 19 | review, based on the written submissions, and based on the |
| 12:38PM | 20 | positions taken on the record today, I adopt the facts in the |
| 12:38PM | 21 | report as my findings of fact, and I incorporate them into the |
| 12:38PM | 22 | record. |
| 12:38PM | 23 | I will now place the presentence investigation report |
| 12:38PM | 24 | filed on April 29th, 2024, in the record under seal.  If an |
| 12:38PM | 25 | appeal is filed, counsel on appeal will be given access to |

12:39PM   1   that sealed report.

12:39PM   2          So let's turn to the guidelines which I must

12:39PM   3   calculate and consider as an important part of my

12:39PM   4   determination of a sentence.  And I apologize to everyone for

12:39PM   5   the very technical nature of what's about to follow, but the

12:39PM   6   guidelines and the reasons behind the guidelines make this a

12:39PM   7   necessary step in the process.

12:39PM   8          Based on the parties' submissions, and based on their

12:39PM   9   representations today in court, there also are no disputes

12:39PM   10  regarding the recommendations in the presentence report as to

12:39PM   11  the applicable sections of the Sentencing Commission's

12:39PM   12  advisory guidelines or the computation of those guidelines.

12:39PM   13         The presentence report calculates under the 2023

12:39PM   14  version of the guidelines manual, first, that counts are

12:39PM   15  grouped together under 3D1.2(d).  And then, because the

12:39PM   16  offense with the higher offense level involved a semiautomatic

12:39PM   17  firearm that was capable of accepting a large-capacity

12:39PM   18  magazine, and because large-capacity magazines were found near

12:39PM   19  the ARM A-15 rifle, Section 2K2.1(a)(4)(B) provides for a base

12:40PM   20  offense level of 20.

12:40PM   21         The presentence report then recommends that the

12:40PM   22  offense level be increased by two levels under 2K2.1(b)(1)(A)

12:40PM   23  of the guidelines, because the offense involved between three

12:40PM   24  and seven firearms, here four firearms.

12:40PM   25         20, plus 2, gets us to 22.

12:40PM  1          The presentence report then recommends that the

12:40PM  2  offense level be decreased by two levels under 3E1.1(a) of the

12:40PM  3  guidelines because the defendant has accepted responsibility

12:40PM  4  for his conduct.

12:40PM  5          And in its statement with respect to sentencing

12:40PM  6  factors, the government has moved for an additional one-level

12:40PM  7  decrease of the offense level under 3E1.1(b).  I grant that

12:40PM  8  motion by the government.

12:40PM  9          So based on all that, the presentence report

12:40PM  10  calculates the total offense level to be 19.  22, minus 2,

12:40PM  11  minus 1, is 19.

12:40PM  12          The report calculates the criminal history category

12:40PM  13  of the defendant to be Category I based on a criminal history

12:41PM  14  score of 1.  Based on my factual findings, I agree with those

12:41PM  15  calculations of both the offense level and the criminal

12:41PM  16  history category.

12:41PM  17          So with a total offense level of 19, and a criminal

12:41PM  18  history category of I, the presentence report calculates the

12:41PM  19  guidelines range as a sentence of imprisonment of 30 to 37

12:41PM  20  months, a fine range of $10,000 to $100,000, supervised

12:41PM  21  release of one to three years, and a mandatory special

12:41PM  22  assessment of $100 that I must impose.  I agree with all those

12:41PM  23  calculations, as well.

12:41PM  24          Mr. Hall, in the Supreme Court's decision in United

12:41PM  25  States versus Booker and the 2nd Circuit's decision in United

USA v Justin Hall - Sentencing - 5/29/24

12

12:41PM 1   States versus Crosby, I must consider the guidelines but I'm

12:41PM 2   not bound by them.  I also must consider the factors in 18,

12:41PM 3   United States Code, Section 3553(a).  Those factors include

12:41PM 4   the nature and the circumstances of the offense; your history

5   and characteristics; the need for the sentence to reflect the

6   seriousness of the offense, to promote respect for the law,

7   and to provide a fair punishment to you; the need to deter

8   others from committing crimes and to protect the public from

9   your crimes; the need to provide you with educational or

10   vocational training in an attempt to rehabilitate you; the

11   types of sentences that are available; any policy statements

12:42PM 12   issued by the Sentencing Commission; and sentences given to

12:42PM 13   others who committed crimes similar to the one to which you

12:42PM 14   pleaded guilty.

12:42PM 15        I plan to take all those factors into account when I

12:42PM 16   impose sentence, but before I do, I want to give the lawyers

12:42PM 17   and you a chance to talk to me about anything anyone thinks is

12:42PM 18   relevant.  So we're going to start with the government.

12:42PM 19        Mr. Fitzsimmons, does the government want to make any

12:42PM 20   remarks?

12:42PM 21        MR. FITZSIMMONS:  Yes, Your Honor.  May I use the

12:42PM 22   podium?

12:42PM 23        THE COURT:  You may.

12:42PM 24        MR. FITZSIMMONS:  Your Honor, in our system of

12:42PM 25   government, no one is above the law; not myself, not

USA v Justin Hall - Sentencing - 5/29/24

13

12:42PM  1   Your Honor, not members of law enforcement, and not the

12:43PM  2   defendant.

12:43PM  3        The Department of Justice, with the authority vested

12:43PM  4   to it by the Executive Branch, is entrusted to meet the

12:43PM  5   Constitution's solemn commands to take care that the laws of

12:43PM  6   the United States are faithfully executed.  One of those laws

12:43PM  7   is Title 18, United States Code, Section 922(g)(9), which

12:43PM  8   prohibits the possession of firearms by individuals previously

12:43PM  9   convicted of a domestic violence crime.

12:43PM  10       The defendant has twice violated that statute, and

12:43PM  11  has now admitted to doing so by possessing numerous firearms

12:43PM  12  and scores of ammunition.  Yet despite those admissions, the

12:43PM  13  defendant continues to declare that he is above the law, even

12:43PM  14  after his plea of guilty.

12:43PM  15       He contends that his self-declared status as a

12:43PM  16  sovereign national strips this Court of its authority to do

12:43PM  17  its own -- to perform its own constitutional function, to

12:43PM  18  interpret and apply the laws of the United States.

12:43PM  19       He has called this Court a fraud.  He has called this

12:44PM  20  Court part of a two-tiered justice system that is bent on

12:44PM  21  prosecuting him.

12:44PM  22       To be clear, the defendant is not here because the

12:44PM  23  government, law enforcement, or this Court, are out to impress

12:44PM  24  him.  The defendant is here because he committed serious

12:44PM  25  violations of federal law, and he is not entitled to act with

12:44PM    1    impunity.

12:44PM    2         THE COURT:  Let me ask you this.  And I understand

12:44PM    3    your argument, and your argument resonates with me.  I get

12:44PM    4    that.  I get the fact that Mr. Hall has basically said on a

12:44PM    5    number of occasions that he doesn't think this law applies to

12:44PM    6    him, and that it violates his right under the Second Amendment

12:44PM    7    and those kinds of things.  We're not going to change his

12:44PM    8    mind.  He -- he -- he believes that, and I believe that he

12:44PM    9    firmly believes that.  We're not going to change his mind.

12:44PM   10         And what we're talking about between your

12:44PM   11    recommendation and Mr. Covert's recommendation -- I'm going to

12:44PM   12    ask Mr. Covert the same question -- is a relatively short, I

12:44PM   13    mean, it's not even relatively short, it is very short.  He

12:44PM   14    may -- he may qualify for release, if I give him 30 months, he

12:45PM   15    may qualify for release next week.  So tell me, what -- what

12:45PM   16    is it about the 30 months?  What is it about the fact that the

12:45PM   17    guidelines somewhat artificially picked 30 months at the low

12:45PM   18    end for this that's so important to you?

12:45PM   19         And I'm going to ask Mr. Covert the same question

12:45PM   20    with respect to what he's asking for, which is time served.

12:45PM   21         Because I think my goal here has to be, given the

12:45PM   22    fact that we're not talking about much time, my goal here has

12:45PM   23    to be to impose a sentence that sends the right message to

12:45PM   24    Mr. Hall, to society, to everyone, it's not just to him,

12:45PM   25    it's -- it's a message that I want to send from here to

USA v Justin Hall - Sentencing - 5/29/24

15

12:45PM    1   everyone.

12:45PM    2        And Mr. Hall and I have disagreed any number of

12:45PM    3   times.  But over the past few months, we've come, I think, to

12:46PM    4   an agreement, and some mutual respect for each other.

12:46PM    5        THE DEFENDANT:  Yes, sir.

12:46PM    6        THE COURT:  I think that that's been very clear from

12:46PM    7   the change in his demeanor and the change in his attitude.  So

12:46PM    8   tell me what's so important about the 30 months.

12:46PM    9        MR. FITZSIMMONS:  Sure, Your Honor.  Part of it is --

12:46PM   10   are the principles that are at stake here.  And like you said,

12:46PM   11   this will send a message both to the defendant and to the

12:46PM   12   broader community.

12:46PM   13        But I will first address the last comment that you

12:46PM   14   made, that Mr. Hall seems to have made some progress

12:46PM   15   throughout these court proceedings from where he was on

12:46PM   16   September 8th, where he was threatening the Court with a

12:46PM   17   military tribunal, to his guilty plea.

12:46PM   18        What is important to the government was the letter he

12:46PM   19   submitted after he had that plea of guilty in which he then

12:46PM   20   calls our entire justice system a two-tiered system of justice

12:46PM   21   that is bent on persecuting him, and has called this Court a

12:46PM   22   fraud, and this Court and these proceedings a miscarriage of

12:46PM   23   justice.

12:46PM   24        So that -- the progress that appeared to have been

12:46PM   25   made at the last in-person proceeding in terms of his guilty

12:47PM 1    plea seems to have gone -- we have taken a step backwards.

12:47PM 2    And so that disposition, his attitude towards this Court,

12:47PM 3    towards the judicial institution, towards the criminal justice

12:47PM 4    system in general, weighs against a lower guideline -- or,

12:47PM 5    sorry, a below-guideline sentence.

12:47PM 6            But that is also one of many factors that I will sort

12:47PM 7    of get into, because that is sort of part of his history and

12:47PM 8    characteristics, but the nature of the offenses here are also

12:47PM 9    very serious, and so I would like to --

12:47PM 10           THE COURT:  I don't disagree with that.

12:47PM 11           MR. FITZSIMMONS:  -- I'd like to walk through those

12:47PM 12   as well --

12:47PM 13           THE COURT:  Go ahead.

12:47PM 14           MR. FITZSIMMONS: -- because 30 months is the low end

12:47PM 15   of the guidelines, which the government has agreed not to

12:47PM 16   object to, but the government feels is fair even considering

12:47PM 17   all the progress the defendant has made, and some of the

12:47PM 18   more -- and his sympathetic back story --

12:47PM 19           THE COURT:  And, by the way, Ms. Ferraro, I recognize

12:47PM 20   that probation has recommended a sentence at the high end of

12:47PM 21   the guidelines, and I am not discounting that, either.  I

12:47PM 22   don't want you to think that I'm simply deciding between the

12:47PM 23   two recommendations and the lawyers, I'm considering

12:48PM 24   probation's recommendation as well.

12:48PM 25           So go ahead, Mr. Fitzsimmons.

12:48PM   1          MR. FITZSIMMONS:  Sure.  So let me turn to the

12:48PM   2     sentencing factors.  The three considerations that I want to

12:48PM   3     focus on today are the gravity of the offenses, his history

12:48PM   4     and characteristics, and the need for this sentence to promote

12:48PM   5     respect for the rule of law.

12:48PM   6          First, seriousness.  The defendant was caught with an

12:48PM   7     AR-15-style rifle, a scoped rifle with a bipod mount, and a

12:48PM   8     shotgun concealed in guitar cases.

12:48PM   9          In addition, the defendant possessed over 1,200

12:48PM   10    rounds of firearm ammunition.  1,200 rounds.

12:48PM   11         THE COURT:  Were all the -- all of the firearms

12:48PM   12    concealed?  Were they all in guitar cases?

12:48PM   13         MR. FITZSIMMONS:  All of the -- the three firearms,

12:48PM   14    there was an additional -- a fourth firearm, that was an older

12:48PM   15    firearm, that was not subject to these proceedings that I

12:48PM   16    don't believe was concealed.  All three firearms were found in

12:48PM   17    cases, two of which were very clearly guitar cases, one of

12:48PM   18    which also appears to be a guitar case but was not fully

12:48PM   19    clear.

12:48PM   20         The defendant possessed body armor, a helmet, a

12:49PM   21    knife, and an axe.  He also possessed items and symbols

12:49PM   22    espousing antigovernment views.  In his interview, the

12:49PM   23    defendant stated that he had these weapons -- firearms and

12:49PM   24    weapons to defend himself from people he believed to be coming

12:49PM   25    after him in Nevada.

12:49PM  1          Firearms concealed in guitar cases are not consistent

12:49PM  2   with that defensive use.  1,200 rounds of ammunition are not

12:49PM  3   consistent with that defensive use.  A scoped rifle with a

12:49PM  4   bipod mount, a mount designed to permit a shooter to fire

12:49PM  5   accurately while down in a prone position are not consistent

12:49PM  6   with defensive use.

12:49PM  7          Also in his interview, the defendant proclaimed a

12:49PM  8   desire to do violence to people who he believes have wronged

12:49PM  9   him.  He joked about how he can't just get into Ghillie suit

12:49PM  10  and shoot people.

12:49PM  11         The Court may already know what a Ghillie suit is

12:49PM  12  but, for the record, it is a form of camouflage clothing, a

12:49PM  13  full suit which allows snipers and hunters to hide in foliage

12:49PM  14  to prevent detection by their target.  It is primarily used

12:49PM  15  with a scoped rifle and a bipod stand to permit effective

12:50PM  16  distance shooting while lying in the prone position.

12:50PM  17         To be clear, the defendant stated over and over again

12:50PM  18  that he has never wanted to be violent.  He has stated that he

12:50PM  19  never has been violent, and he had not violent with law

12:50PM  20  enforcement both times that he was arrested.  But the nature

12:50PM  21  of the items recovered, his own statements, and the

12:50PM  22  antigovernment rhetoric all point to a gravely serious

12:50PM  23  offense.

12:50PM  24         One of the defendant's counter arguments that I would

12:50PM  25  like to address is that he attempts to minimize --

12:50PM  1      THE COURT:  When you say it points to a gravely

12:50PM  2  serious offense, I get that.  But, you know, keeping him in

12:50PM  3  jail for another three weeks, what are we accomplishing by

12:50PM  4  that?

12:50PM  5      MR. FITZSIMMONS:  Your Honor, it doesn't matter if it

12:50PM  6  was three weeks, three days, three months.  Here, I -- the

12:50PM  7  government believes that it is inappropriate to go below the

12:50PM  8  sentencing guidelines because when everything has been already

12:50PM  9  been factored into this including, at least from our

12:50PM  10  perspective, including the -- his sort of background, his

12:51PM  11  positive attributes as well, and 30 months the government

12:51PM  12  feels is more than fair to the defendant.

12:51PM  13      THE COURT:  Are you bound by that, by the plea

12:51PM  14  agreement to do that?

12:51PM  15      MR. FITZSIMMONS:  Absolutely, Your Honor.

12:51PM  16      THE COURT:  Okay.

12:51PM  17      MR. FITZSIMMONS:  So, one of the counter arguments

12:51PM  18  that defendant has made throughout these proceedings is that

12:51PM  19  he was not aware that he was a prohibited person at the time

12:51PM  20  that he possessed these firearms.  That's inconsistent with

12:51PM  21  his own statements.  When the defendant was released from his

12:51PM  22  2021 Nevada state case, he was released on conditions that

12:51PM  23  prohibited him from possessing firearms.  He signed that

12:51PM  24  release form, colon Justin dash Andrew colon Hall.  Those

12:51PM  25  conditions were in effect when he drove to Buffalo with the

USA v Justin Hall - Sentencing - 5/29/24

20

12:51PM  1   firearms in his truck.

12:51PM  2           Second, when he was interviewed in Buffalo, the

12:51PM  3   defendant brought up his possession of these firearms, and he

12:51PM  4   didn't tell law enforcement I own these firearms legally.  He

12:52PM  5   didn't tell law enforcement I used to be a prohibited person

12:52PM  6   but that two-year period is up.  The defendant stated he knew

12:52PM  7   he was a prohibited person, but that he believed the

12:52PM  8   government could not infringe on his right to possess

12:52PM  9   firearms.  In other words, the defendant knew he could not

12:52PM  10  possess firearms, but he believed the rules did not apply to

12:52PM  11  him.

12:52PM  12          Finally, with respect to the seriousness of the

12:52PM  13  offenses, I would like to touch on the letters that the

12:52PM  14  defendant sent to officials in relation to his Nevada state

12:52PM  15  charge.

12:52PM  16          While he remained in Nevada in 2022, help sent writs

12:52PM  17  of execution, as he calls them, to various judges,

12:52PM  18  prosecutors, and lawyers, including those on his state

12:52PM  19  criminal case.  In these letters, he threatened officials with

12:52PM  20  imprisonment and death, accusing them of genocide and crimes

12:52PM  21  of humanity.  He claimed that he was acting on behalf of a

12:52PM  22  court created by congress in doing so.  He threatened them

12:52PM  23  with arrest by extrajudicial bounty hunters that he referred

12:52PM  24  to as "seekers."  And I think importantly, to touch on one of

12:53PM  25  your earlier question to me, instead of expressing remorse for

12:53PM   1   sending these threatening letters, in his letter to the Court

12:53PM   2   he tells the Court that those letters are legitimate and

12:53PM   3   binding.

12:53PM   4        The firearms, the ammunition, these letters, the

12:53PM   5   symbols, defendant's statements, all demonstrate a

12:53PM   6   significantly grave set of offenses.

12:53PM   7        With respect to the defendant's history and

12:53PM   8   characteristics, the Court should consider the defendant's

12:53PM   9   positive attributes as well as his negative ones.  I'm not

12:53PM  10   going to go into every single one in detail, we covered them

12:53PM  11   in the briefing and in the PSR.  But like I started out,

12:53PM  12   above-the-law mentality of the defendant is the one that is

12:53PM  13   the most -- is the one that I'd like to focus on today.

12:53PM  14        At many of these court proceedings, he has declared

12:53PM  15   that he is above the law, and he has demanded and insisted

12:53PM  16   that he be immediately released.  And he has threatened this

12:53PM  17   Court and other individuals in doing so.  On September 8th, he

12:53PM  18   threatened people in this courtroom with an extrajudicial

12:54PM  19   military tribunal and called this Court and the marshals

12:54PM  20   criminals.  He refused to be transported by the marshals on

12:54PM  21   one occasion.  He has insulted the marshals in open court.

12:54PM  22        And I understand that the Court is unlikely to take

12:54PM  23   these insults personally, nor should it.  But the defendant is

12:54PM  24   attacking the judicial institution.  He called this Court a

12:54PM  25   kangaroo court because the Court did not obey his command to

USA v Justin Hall - Sentencing - 5/29/24

22

| | | |
|---|---|---|
| 12:54PM | 1 | be released immediately. |
| 12:54PM | 2 | At the end of the day, the Court must impose a |
| 12:54PM | 3 | sentence that, among other factors, promotes respect for the |
| 12:54PM | 4 | rule of law.  Granting the defendant's request to a |
| 12:54PM | 5 | below-guideline sentence here, at least in the government's |
| 12:54PM | 6 | view, is not sufficient to do so.  Thank you. |
| 12:54PM | 7 | THE COURT:  There are no identifiable victims, |
| 12:54PM | 8 | correct? |
| 12:54PM | 9 | MR. FITZSIMMONS:  No, Your Honor. |
| 12:54PM | 10 | THE COURT:  Okay.  Mr. Covert? |
| 12:54PM | 11 | MR. COVERT:  Yes, Your Honor. |
| 12:54PM | 12 | THE COURT:  So in addition to addressing the |
| 12:54PM | 13 | difference between the small difference between your request |
| 12:54PM | 14 | and the government's request, tell me why I shouldn't impose |
| 12:54PM | 15 | something at the high end of the guidelines, given -- there is |
| 12:55PM | 16 | some scary stuff in the stuff that he writes to me, including |
| 12:55PM | 17 | even the last letter that he writes to me that indicates that |
| 12:55PM | 18 | he still doesn't believe that these laws apply to him.  And I |
| 12:55PM | 19 | believe that he -- that he sincerely holds those beliefs.  I |
| 12:55PM | 20 | don't doubt that those are sincerely-held beliefs.  They scare |
| 12:55PM | 21 | me.  Those things scare me a little bit, so talk to me about |
| 12:55PM | 22 | that. |
| 12:55PM | 23 | MR. COVERT:  Your Honor, in the time that I've gotten |
| 12:55PM | 24 | to know Mr. Hall since I was first assigned to him, and I |
| 12:55PM | 25 | think the Court has discussed kind of the progression and the |

12:55PM   1   manner that he has dealt with these matters, the respect he's

12:55PM   2   shown for the Court, and I think that we have come a long way.

12:55PM   3          What I've learned about Mr. Hall is that he is a

12:55PM   4   great -- a man of great character and belief.  He believes

12:55PM   5   very genuinely in what he tells the Court, what he is doing

12:55PM   6   here.

12:55PM   7          But what I've also learned is that he is not

12:55PM   8   alleging, or he is not threatening to himself inflict violence

12:56PM   9   upon anybody.  There's no instance here with -- whether it's

12:56PM  10   the arrest in Nevada or here where he touched the weapons in a

12:56PM  11   way that was threatening to anybody.  He allowed himself to be

12:56PM  12   arrested.  He did not resist arrest.  He --

12:56PM  13          THE COURT:  The only episode of violence is the

12:56PM  14   episode with his ex-wife before they were married, which may

12:56PM  15   very well have been a misunderstanding --

12:56PM  16          MR. COVERT:  Correct.

12:56PM  17          THE COURT:  -- based on what observers saw.

12:56PM  18          MR. COVERT:  Yeah.  The Court referenced her

12:56PM  19   statement that she indicates that that was patrons inside the

12:56PM  20   bar who must have been under the influence, not understanding

12:56PM  21   what occurred outside the bar.

12:56PM  22          THE COURT:  Right.

12:56PM  23          MR. COVERT:  There were no direct witnesses, and

12:56PM  24   that's what led to this, and that's what led to --

12:56PM  25          THE COURT:  Regardless, though, the plea was to a

| | | |
|---|---|---|
| 12:56PM | 1 | domestic violence -- |
| 12:56PM | 2 | MR. COVERT:  No question. |
| 12:56PM | 3 | THE COURT:  -- crime. |
| 12:56PM | 4 | MR. COVERT:  And I think that what occurred here is |
| 12:56PM | 5 | that nobody explained to him the -- with due respect to the |
| 12:57PM | 6 | government, there was no order -- particular order of |
| 12:57PM | 7 | protection in place when Mr. Hall was arrested in Nevada in |
| 12:57PM | 8 | 2021 or here in 2022 in Buffalo.  That two-year prohibition |
| 12:57PM | 9 | was from March 2nd, I believe, of 2017, had long since |
| 12:57PM | 10 | expired.  He was not alleged to have possessed any weapons in |
| 12:57PM | 11 | Nevada during that two-year period. |
| 12:57PM | 12 | Then he began possessing weapons believing that |
| 12:57PM | 13 | that -- the judge had told me, I'm allowed to possess weapons. |
| 12:57PM | 14 | Why would he say only two years if I can't possess them after |
| 12:57PM | 15 | two years?  So he now has a genuine belief that he can possess |
| 12:57PM | 16 | weapons. |
| 12:57PM | 17 | He gets arrested in Nevada.  He believes that |
| 12:57PM | 18 | that's -- in 2021.  He believes that that's a mistake, that |
| 12:57PM | 19 | they should have known -- those charges were brought in state |
| 12:57PM | 20 | court not federal court until the day he was arrested here. |
| 12:57PM | 21 | Then they indict him in federal court there under the |
| 12:57PM | 22 | 922.  So he was not on the road from Nevada with the belief |
| 12:58PM | 23 | that he was charged in Nevada with weapon possession, and then |
| 12:58PM | 24 | had them here.  He was traveling across the country.  There's |
| 12:58PM | 25 | no allegation with respect to his arrest in Buffalo that he |

USA v Justin Hall - Sentencing - 5/29/24

25

12:58PM  1  was intending to use the weapons.

12:58PM  2       Even the probation report indicates because of the

12:58PM  3  tragedy that occurred about a week earlier in Buffalo at the

12:58PM  4  Tops store, that there was this heightened security nationwide

12:58PM  5  which led them, in our mind, to illegally have pulled his

12:58PM  6  vehicle over without having committed any traffic incidents

12:58PM  7  whatsoever, he was pulled over because of this general

12:58PM  8  heightened security.  We made those motions, but we've

12:58PM  9  essentially waived them by entering into a plea to try to get

12:58PM  10  these cases resolved.

12:58PM  11       But he did not -- those weapons that he possessed

12:58PM  12  were not in and of themselves illegal in that they were not an

12:58PM  13  AR that was illegal if he been caught with it without being a

12:58PM  14  922 individual who was not to have weapons.  He's perfectly

12:59PM  15  legal to have a shotgun, perfectly legal to have the rifles,

12:59PM  16  perfectly legal to have everything.  But I know the government

12:59PM  17  describes all of these items that were with it as being items

12:59PM  18  that are indicative of -- are threatening, and that are

12:59PM  19  dangerous.  Well, you know, weapons are dangerous, and they're

12:59PM  20  perfectly legal unless you're a prior felon.

12:59PM  21       THE COURT:  But he is --

12:59PM  22       MR. COVERT:  But he is.

12:59PM  23       THE COURT:  -- and that's the point.

12:59PM  24       MR. COVERT:  Yeah, he didn't -- you know, and that

12:59PM  25  was the point.  And he's taken responsibility now even though

USA v Justin Hall - Sentencing - 5/29/24

26

12:59PM   1   we believe that there are some very valid suppression issues

12:59PM   2   that we could have continued to pursue.  He has taken

12:59PM   3   responsibility.

12:59PM   4          And the reason I believe, in answering the Court's

12:59PM   5   first question to the government, that it's not necessary to

12:59PM   6   have him incarcerated for another three weeks or up to the

12:59PM   7   high end of the guideline range as probation indicates is

12:59PM   8   because we've seen the changes.  We've seen the respect that

12:59PM   9   he has.  He's gonna have his beliefs.

12:59PM  10          You know, I'm not saying this to be a wise guy, but

01:00PM  11   we've got somebody who's being -- we've got a jury out today

01:00PM  12   in New York that's made very similar comments about the

01:00PM  13   legitimacy of the judiciary, and the judicial branch, and the

01:00PM  14   players involved.  And he uses all these words.  That doesn't

01:00PM  15   mean he's gonna be punished more because he has these beliefs.

01:00PM  16          Mr. Hall genuinely believes in what he has expressed

01:00PM  17   to the Court.  And he did not, in his mind, threaten the Court

01:00PM  18   or anybody else when he says that you were serving the

01:00PM  19   environmental court documents on you, you're subject to these

01:00PM  20   penalties.  He's not saying I'm going to incarcerate you, I'm

01:00PM  21   going to harm you.  It's, we're serving these documents on you

01:00PM  22   that warn you of what the potential could be in his mind

01:00PM  23   because he believes that this is a legitimate court.  But he

01:00PM  24   is not threatening to actually harm anybody, to actually take

01:00PM  25   any actions here.  He's got legitimate beliefs, he's got an

01:01PM    1    absolute First Amendment right to express them.

01:01PM    2           And intertwined throughout the government's argument,

01:01PM    3    and I don't blame them for their arguments and their concern,

01:01PM    4    but intertwined throughout these arguments is always, well,

01:01PM    5    you have to look at this in light of his disrespect for the

01:01PM    6    judiciary or his dislike of the United States government.

01:01PM    7           No, you don't.  You really don't.

01:01PM    8           THE COURT:  I agree with you on that.

01:01PM    9           MR. COVERT:  You have to separate.  Otherwise, the

01:01PM   10    First Amendment means nothing.  If I can't engage in the same

01:01PM   11    conduct that anybody else can legally engage in because I have

01:01PM   12    beliefs that are not favored by the current political system,

01:01PM   13    that is not --

01:01PM   14           THE COURT:  I agree with you.  I agree with you.  And

01:01PM   15    anything he said about me, anything he said about the Court,

01:01PM   16    that's not going to affect us.

01:01PM   17           But talk to me about promoting respect about the law.

01:01PM   18    Talk to me about the seriousness of this offense, given the

01:01PM   19    fact that there was -- that there were some pretty serious

01:02PM   20    weapons and a whole lot of ammunition involved here.

01:02PM   21           MR. COVERT:  Well, I think that the first sign of his

01:02PM   22    respect for the law is he didn't physically try prevent

01:02PM   23    himself from being arrested in Nevada in 2021, or here in

01:02PM   24    Buffalo in 2022.  He did not engage in any form of trying to

01:02PM   25    fight off the officers.

USA v Justin Hall - Sentencing - 5/29/24

28

01:02PM   1         He does believe that the system is not legitimate,

01:02PM   2    and he expressed that repeatedly, peacefully.

01:02PM   3         So, I believe that between that, and when we put

01:02PM   4    those in their proper context, and now we have a gentleman who

01:02PM   5    I believe today, and as the Court described, over the last few

01:02PM   6    months is respecting the fact that he doesn't believe that

01:02PM   7    this is legitimate, he's made that crystal clear.  But he

01:02PM   8    still's respecting.  He's there, he's showing up, he's not

01:02PM   9    arguing.  He's still respecting the system.

01:02PM  10         He now understands that he can never have a weapon

01:03PM  11    again for the rest of his life, that what he was led to

01:03PM  12    believe in 2017 by the judge in Nevada, that he could have

01:03PM  13    them again after two years, is absolutely incorrect.  And he

01:03PM  14    can never have a shotgun, rifle, pistol, anything along those

01:03PM  15    lines.  And he has genuinely said to me --

01:03PM  16         And one thing I give him credit for is he has never

01:03PM  17    once lied to me.  He's never misrepresented -- he's told me

01:03PM  18    what his views with are, he told me what he did, he told me

01:03PM  19    what behavior he engaged in.  He did have the weapon out

01:03PM  20    there.  He did have the three rifles here.  He's not blaming

01:03PM  21    anybody.

01:03PM  22         Now, the rifle -- and an example of trying to paint

01:03PM  23    everything in a negative way because of his political views.

01:03PM  24    The rifles in a guitar case is a safety factor.  You don't

01:03PM  25    want them, the public, to see them through windows.  Having

USA v Justin Hall - Sentencing - 5/29/24

29

01:03PM 1     them on a back seat of a vehicle is not a great idea.  You put

01:03PM 2     them in something that can't be seen.

01:03PM 3             New York State just changed our laws so that if, in

01:03PM 4     New York State, if you have a pistol and you're going to leave

01:04PM 5     it in a vehicle, it has to be in a box, but hidden away, and

01:04PM 6     the public can't see it or it's in violation of the new

01:04PM 7     New York State laws.

01:04PM 8             This is similar in concept.  It's not the exact same

01:04PM 9     thing.  But for the safety of others, he's not advertising to

01:04PM 10    the world, those who might come by his vehicle in parking lot,

01:04PM 11    the fact that he has guns.

01:04PM 12            THE COURT:  And if it's in a gun case, it's the same

01:04PM 13    thing.

01:04PM 14            MR. COVERT:  It's the same thing.

01:04PM 15            New York State requires you to take that gun case and

01:04PM 16    put it underneath a seat, in a trunk, it has to be out of

01:04PM 17    view, because people would recognize a gun case and that would

01:04PM 18    be subject to being stolen.

01:04PM 19            So we can look at everything in two ways, that if he

01:04PM 20    were just an avid sportsman, what he did wouldn't seem

01:04PM 21    nefarious at all.  But because he has these views, we're going

01:04PM 22    to hold those views against him in violation of his First

01:04PM 23    Amendment rights, and now characterize everything in the most

01:04PM 24    negative possible way.

01:04PM 25            And I understand that.  It's the same reason he was

01:04PM    1    pulled over when Tops happened, after Tops occurred, is that,

01:05PM    2    you know, we -- we get concerned, weapons are serious matters,

01:05PM    3    the Court has repeatedly said what he pled to is to is a

01:05PM    4    serious -- are two serious offenses.  There's no dispute to

01:05PM    5    that.

01:05PM    6             These are two serious offenses, and he has taken full

01:05PM    7    responsibility.  And he has not taken the position he hasn't

01:05PM    8    done these things.  He has taken the position I've done these

01:05PM    9    things, but I disagree with our government and our current

01:05PM   10    system.  But he's still not behaving in a way that says I

01:05PM   11    shouldn't be here, I shouldn't get one more day in jail, this

01:05PM   12    is all wrong, and you have to let me out now because this is

01:05PM   13    an illegitimate system.  He has never done that.

01:05PM   14             He has also been very, very concerned about his loved

01:05PM   15    ones, those around him.  The Court's read all the papers.

01:05PM   16    He's gone through a very tough patch with different family

01:05PM   17    members and doesn't have access to his children.  But he wants

01:05PM   18    to be able to get out as quickly as possible, as anybody would

01:05PM   19    who's in jail, of course, start assisting his girlfriend, who

01:06PM   20    they intend to get married, assist with her child.

01:06PM   21             His mother recently had a stroke.  He can't do

01:06PM   22    anything from the jail to assist there.

01:06PM   23             And when it comes back to the Court question of do we

01:06PM   24    need to have a deterrent message sent by having him in jail

01:06PM   25    for a little while longer?  Maybe significantly longer?  I

USA v Justin Hall - Sentencing - 5/29/24

31

01:06PM   1   don't think so.  The message has been sent.  He was arrested,

01:06PM   2   he has been in jail for over two years.  Nobody from the

01:06PM   3   outside's gonna say, well, because the judge didn't give him

01:06PM   4   two years and four months, or two years and eight months, this

01:06PM   5   was not treated as a serious offense.

01:06PM   6        He's a convicted felon now.  He understands he can

01:06PM   7   never possess a weapon again, he is going to suffer that.

01:06PM   8   He's going to suffer any voting losses he's going to have in

01:06PM   9   whatever state he wants to vote in.  He is going to suffer

01:06PM  10   many, many harms to him.

01:06PM  11        And the deterrence factor has been to -- a message

01:07PM  12   has been sent to the community.  You can't do this.  You can't

01:07PM  13   have weapons that I can have, that -- he can't possess now.

01:07PM  14   He now gets that.

01:07PM  15        He's been punished for it.  Over two years in jail is

01:07PM  16   pretty good punishment for having misunderstood or not

01:07PM  17   understood exactly what the laws were in relation to the

01:07PM  18   weapons.  I don't see where -- what is achieved by additional

01:07PM  19   period of incarceration beyond today.

01:07PM  20        I am so impressed with how far he's come, the respect

01:07PM  21   he's shown.  I don't think he'll have any issues on supervised

01:07PM  22   release.  I will be shocked to get a phone call in the future

01:07PM  23   that he has an issue with that.

01:07PM  24        He is -- he is a -- I won't say a changed person

01:07PM  25   because his beliefs are his beliefs.  But his -- he has

01:07PM 1   developed the respect for our system, and I think it's because

01:07PM 2   Your Honor treated him respectfully.

01:07PM 3          You know, I've taken a lot of time with him.  And he

01:07PM 4   understands that our system has to be respected, and he can

01:08PM 5   continue having those beliefs and associating with others that

01:08PM 6   have those beliefs, as long as he's not violating our laws.

01:08PM 7          And a period of supervised release will show -- I

01:08PM 8   fully believe that he will do just fine on supervised release.

01:08PM 9   But if he can't, as the government suspects, he can't lead a

01:08PM 10  law-abiding life, it will show during supervised release.

01:08PM 11  We'll know.  And the Court will have a chance to have him

01:08PM 12  before the Court again, and we'll find out where we go from

01:08PM 13  there.

01:08PM 14         But, you know, he is someone who really wants to

01:08PM 15  assist others.  I think that many of the character letters are

01:08PM 16  just wonderful that we read, because it talks about repeatedly

01:08PM 17  he'll give the shirt off his back because he -- that same

01:08PM 18  conviction he takes to his political views, he takes to taking

01:08PM 19  care of those around him, to his family, to his friends, to

01:08PM 20  his fiancée/girlfriend that he's going to go see, committing

01:08PM 21  to go help her.  And he is that type of a person.

01:08PM 22         And I don't see any -- anything of evidence that I've

01:09PM 23  been shown that would lead me to believe that he is not a man

01:09PM 24  of character.  He is certainly honest.  He certainly follows

01:09PM 25  through on what he wants, what he says he is going to do,

01:09PM   1   and -- and I think he'll do so here.

01:09PM   2          And the only -- the only reason we would question

01:09PM   3   that is because of his views.  And those views, I believe, are

01:09PM   4   protected by the First Amendment and should not be taken into

01:09PM   5   account.  Obviously, the Court has to take everything into

01:09PM   6   account, but those should not be used to harm him

01:09PM   7   affirmatively when he has those views, but is still willing to

01:09PM   8   be a law-abiding citizen, to respect our laws, to respect the

01:09PM   9   courtroom, to respect the judge, and he will certainly respect

01:09PM  10   being on supervised release and what he's told to do.

01:09PM  11          He had no issues in -- after he was sentenced in 2017

01:09PM  12   leading a law-abiding life, and not having weapons for two

01:09PM  13   years, so he didn't have them.  But, and now he knows, he

01:09PM  14   definitely knows, I can assure the Court in every which way,

01:10PM  15   that I have made sure he understands there will never be a

01:10PM  16   weapon in his vicinity for the rest of his life, or he's

01:10PM  17   facing another set of charges, even if it's after supervised

01:10PM  18   release.

01:10PM  19          So, for those reasons, Your Honor, I really

01:10PM  20   respectfully -- I usually don't ask for it, a specific

01:10PM  21   sentence, but I believe it this case, given what he has done,

01:10PM  22   given how he has really come forward and assisted us, I don't

01:10PM  23   see any benefit to additional incarceration time, and I would

01:10PM  24   ask that the Court sentence him to time served.

01:10PM  25          THE COURT:  Thank you.

01:10PM   1          MR. FITZSIMMONS:  Your Honor, may I respond briefly?

01:10PM   2          THE COURT:  I'm sorry?

01:10PM   3          MR. FITZSIMMONS:  May I respond briefly to a couple f

01:10PM   4  points?

01:10PM   5          THE COURT:  Very briefly, yeah.

01:10PM   6          MR. FITZSIMMONS:  Your Honor, I --

01:10PM   7          THE COURT:  I'm going to give Mr. Covert the last

01:10PM   8  word, but go ahead.

01:10PM   9          MR. FITZSIMMONS:  Sure.  I do -- there was a

01:10PM  10  discussion about the bail order and the -- which federal

01:10PM  11  charges, and how they all lined up, so I do want to just talk

01:10PM  12  about the timeline a little bit because it's important for his

01:10PM  13  compliance.

01:10PM  14          He was charged by the State of Nevada in 2021.

01:10PM  15          THE COURT:  Okay.

01:10PM  16          MR. FITZSIMMONS:  He was released by the State of

01:11PM  17  Nevada in 2021 on conditions, conditions that he signed in

01:11PM  18  2021 that he would not possess a firearm.

01:11PM  19          Even though he was not federally charged in Nevada,

01:11PM  20  while he was in Nevada -- well, the grand jury returned an

01:11PM  21  indictment, he didn't appear, he didn't know about the Nevada

01:11PM  22  federal charges until he came here, he was on those

01:11PM  23  conditions.  So what was stated about, well, he still thought

01:11PM  24  that he was not a prohibited person is just not true.  He had

01:11PM  25  those bail conditions in place.  He made statements to law

01:11PM 1    enforcement indicating that he knew that he was a prohibited

01:11PM 2    person.

01:11PM 3            The only other thing that I wanted to mention was the

01:11PM 4    argument about the First Amendment.  Obviously, the defendant

01:11PM 5    has a First Amendment right to believe what he wants to

01:11PM 6    believe, but what I take issue with is the suggestion that he

01:11PM 7    has respected the law and abided by the law even though he has

01:11PM 8    these First Amendment beliefs.

01:11PM 9            He has sent threatening letters to officials.  He, in

01:11PM 10   his interview, indicated that the reason why he possessed the

01:12PM 11   firearms is that he didn't believe the law applied to him.

01:12PM 12   That is conduct.  That is not a First Amendment belief.  He is

01:12PM 13   acting on is beliefs by one -- he also, one, possessing the

01:12PM 14   firearms, two, leaving the State of Nevada when he had a

01:12PM 15   federal -- or, sorry, a state court, criminal court appearance

01:12PM 16   less than a week away stating that he intended not to show up

01:12PM 17   to those proceedings.  Why?  Because he did not believe that

01:12PM 18   the laws applied to him.

01:12PM 19           So I don't agree with the assertion that while he

01:12PM 20   just has these beliefs, he's entitled to them under the First

01:12PM 21   Amendment, but they're not affecting his ability to -- or, did

01:12PM 22   not affect his ability to respect the law and abide by the

01:12PM 23   law.  There were several incidences in which those beliefs, he

01:12PM 24   acted on them inappropriately.

01:12PM 25           THE COURT:  Okay.  Do you want to respond to the

USA v Justin Hall - Sentencing - 5/29/24

36

01:12PM 1    first thing he said about the fact that he signed papers in

01:12PM 2    Nevada in the state court prosecution saying he couldn't

01:12PM 3    possess a weapon, and yet came here?  Isn't that inconsistent

01:13PM 4    with your argument --

01:13PM 5            MR. COVERT:  Your Honor, it is.  And we didn't -- you

01:13PM 6    know, I just went back through the government's documents, and

01:13PM 7    we didn't realize that he had signed an order of protection,

01:13PM 8    or an order that says that he cannot have a weapon.  He did

01:13PM 9    not understand that.  And whatever the flurry of what was

01:13PM 10   going on when he was in court and released, that box was

01:13PM 11   checked and he did sign it.  So, we -- I do retract that.

01:13PM 12           THE COURT:  Okay.

01:13PM 13           MR. COVERT:  But, Your Honor, again, I think that

01:13PM 14   this is all centered upon -- given that we're only looking at

01:13PM 15   some additional time, marginal time, which is very important

01:13PM 16   to him because that's his free -- his -- his freedom, I don't

01:13PM 17   believe that anything that the government, respectfully, they

01:13PM 18   made very good comments, and we don't in any way mean to

01:13PM 19   diminish their concerns, but I don't believe that any of the

01:13PM 20   factors that they discussed justify any additional time beyond

01:13PM 21   today, because it's -- we're not talking about an extra two

01:13PM 22   years, an extra three years, we're talking about a time,

01:14PM 23   and --

01:14PM 24           THE COURT:  That's what I'm struggling with, that's

01:14PM 25   exactly what I'm struggling with.

01:14PM 1        MR. COVERT:  Yeah.  And my understanding then is

01:14PM 2  that -- and I had to ask a much greater mind than myself,

01:14PM 3  MaryBeth, how it works if the Court does give him some

01:14PM 4  additional time.  And my understanding is that he has to go

01:14PM 5  back in and then be processed by the Bureau of Prisons because

01:14PM 6  they have to actually make the determination of good time

01:14PM 7  served.  Ms. Ferraro and I were dealing with trying to

01:14PM 8  calculate that today, and she even contacted the Bureau of

01:14PM 9  Prisons, and they gave her, you know, nonofficial answers but

01:14PM 10  ballparks, because it's all calculated there.

01:14PM 11        I'm really looking to avoid that.  And according to,

01:14PM 12  again, Mrs. Covert, we then have to stay on top of them to try

01:14PM 13  to get them to make the decision quickly, because he may end

01:14PM 14  up being there longer than is anticipated because they don't

01:14PM 15  make a calculation and decision quickly enough.

01:14PM 16        I just don't see the need to put him through that.  I

01:14PM 17  think that, you know, again, he -- he'll -- if this is -- I

01:15PM 18  don't believe that this is a change in how he's respecting the

01:15PM 19  Court based on trying to get a better sentence.  I think that

01:15PM 20  I have helped and you have helped, Your Honor, get him to come

01:15PM 21  along and understand that he has to do two tiers here, he can

01:15PM 22  have his views but respect us.  And beyond that now, I think

01:15PM 23  supervised release will be the acid test of whether he's

01:15PM 24  genuine in that or not.

01:15PM 25        And, again, he has never brandished the weapons here.

01:15PM    1    It would be a different discussion if he brandished weapons.

01:15PM    2          So, Your Honor, otherwise, we -- I think we've

01:15PM    3    exhausted the issues.

01:15PM    4          THE COURT:  Thank you.

01:15PM    5          Mr. Hall, anything you would like to say?  You can

01:15PM    6    stay seated.  You can stay seated, yeah, just talk right into

01:15PM    7    the microphone.

01:15PM    8          THE DEFENDANT:  Yes, sir.  This has been a

01:15PM    9    life-changing experience for me.

01:15PM   10          Any of the hardships that I've had to face during

01:15PM   11    this have, you know, really shaken me to the core.  You know,

01:16PM   12    I've been dealing with just the loss of time with my loved

01:16PM   13    ones, my children.  My mom has suffered a stroke during this

01:16PM   14    time.  I have people outside of these walls who really,

01:16PM   15    really, really need me to be free.  And these are people who

01:16PM   16    are innocent, and they love me, and I love them, and they need

01:16PM   17    me, and I need to be free for them.

01:16PM   18          And I don't need to ever go back to jail for any

01:16PM   19    reason, not even a parking ticket.  I am fully in compliance

01:16PM   20    with your requests and your -- the government's request to

01:16PM   21    just put away and leave the firearms alone.  I'm fine with

01:16PM   22    that.

01:16PM   23          I have never threatened or harmed anyone in my life,

01:16PM   24    nor would I.  I just -- I just need to be free for -- to get

01:16PM   25    on with my life.  People are depending on me.  And this is

USA v Justin Hall - Sentencing - 5/29/24

39

01:17PM    1    very painful to be in jail this long.

01:17PM    2           So as far as my comments to this Court -- I

01:17PM    3    apologize.  I apologize.

01:17PM    4           THE COURT:  Thank you.

01:17PM    5           THE DEFENDANT:  You know, I have only had love for my

01:17PM    6    country, and if it means that I have to pick up a pen to

01:17PM    7    change my country, then that's what I'll do.  But there will

01:17PM    8    be no weapons involved.

01:17PM    9           THE COURT:  Thank you.  Does either counsel know of

01:17PM   10    any reason why sentence should not now be imposed?

01:17PM   11           MR. FITZSIMMONS:  No, Your Honor.

01:17PM   12           MR. COVERT:  No, Your Honor.

01:17PM   13           THE COURT:  Pursuant to the Sentencing Reform Act of

01:17PM   14    1984 and the 2023 version of the sentencing guidelines, it's

01:17PM   15    the judgment of the Court that the defendant, Justin Hall, is

01:17PM   16    hereby sentenced to time served on each count to run

01:17PM   17    concurrent with one another.  The cost of incarceration fee is

01:17PM   18    waived.

01:17PM   19           The defendant shall be placed on supervised release

01:17PM   20    for a term of three years on each count, again to run

01:18PM   21    concurrently, and the following conditions shall apply.

01:18PM   22           Within 72 hours, the defendant shall report in person

01:18PM   23    to the probation office in this district, unless his probation

01:18PM   24    officer instructs him differently.

01:18PM   25           The defendant shall comply with the standard

01:18PM 1    conditions of supervised release adopted by the Court.

01:18PM 2            The defendant shall not commit any crimes under

01:18PM 3    federal, state, or local law.

01:18PM 4            The defendant shall not possess a firearm,

01:18PM 5    ammunition, or any other dangerous device.

01:18PM 6            The defendant shall not possess a controlled

01:18PM 7    substance except as prescribed by a physician.

01:18PM 8            The defendant shall cooperate in the collection of a

01:18PM 9    DNA sample as required by the Justice For All Act of 2004.

01:18PM 10           The defendant shall participate in a program for

01:18PM 11   substance abuse, including substance abuse testing such as

01:18PM 12   urinalysis and other testing, and shall undergo a drug/alcohol

01:18PM 13   evaluation and treatment if substance abuse is indicated by

01:18PM 14   the testing.  The probation officer will supervise the details

01:18PM 15   of any testing and treatment, including the selection of a

01:18PM 16   treatment provider and schedule.  If inpatient treatment is

01:18PM 17   recommended, however, it must be approved by the Court unless

01:19PM 18   the defendant consents.

01:19PM 19           The defendant is not to leave treatment until

01:19PM 20   completion or as ordered by the Court.  While in treatment,

01:19PM 21   and after discharge from treatment, the defendant is to

01:19PM 22   abstain from using alcohol.  The defendant is required to

01:19PM 23   contribute to the cost of services rendered.  And the

01:19PM 24   defendant shall abstain from the excessive use of alcohol.

01:19PM 25           Because this offense occurred after September 13,

01:19PM   1   1994, drug testing is required by the 1994 Crime Control Act.

01:19PM   2        And I'm imposing these conditions, and in particular

01:19PM   3   the parts of these conditions in addition to the required drug

01:19PM   4   testing, because of the defendant's admitted history of

01:19PM   5   alcohol use, using up to six beers at a time, and in

01:19PM   6   particular his 2005 conviction for driving under the

01:19PM   7   influence, and his 2017 conviction for possessing a gun under

01:19PM   8   the influence of alcohol or drugs.  I believe that this

01:19PM   9   condition therefore -- these conditions therefore serve the

01:19PM   10   statutory sentencing purposes of rehabilitation and public

01:20PM   11   protection.

01:20PM   12        The defendant shall submit to a search of his person,

01:20PM   13   property, vehicle, place of residence, or any other property

01:20PM   14   under his control based on reasonable suspicion, and shall

01:20PM   15   permit confiscation of any evidence or contraband discovered.

01:20PM   16        I'm imposing this condition because the offense of

01:20PM   17   conviction involved weapons and ammunition.  Those can be

01:20PM   18   easily hidden from law enforcement.  And I believe that the

01:20PM   19   condition therefore serves the statutory sentencing purposes

01:20PM   20   of deterrence and public protection.

01:20PM   21        The defendant shall pay to the United States a

01:20PM   22   mandatory special assessment of $100, that's due immediately.

01:20PM   23   Payment to be made to the Clerk, United States District Court,

01:20PM   24   Attention Finance, United States Courthouse, 2 Niagara Square,

01:20PM   25   Buffalo, New York 14202.

USA v Justin Hall - Sentencing - 5/29/24

42

01:20PM    1    So, this was a tough one.  In determining the

01:20PM    2    sentence, I've carefully reviewed the circumstances of the

01:20PM    3    case and the plea.  I began my analysis with the guidelines.

01:20PM    4    I've considered the arguments, the excellent arguments, raised

01:20PM    5    by both sides as to what the appropriate sentence should be in

01:21PM    6    this case.  And most important, I've considered the factors in

01:21PM    7    18, United States Code, Section 3553(a), which I stated

01:21PM    8    earlier and I won't repeat.

01:21PM    9    I'm not imposing a fine.  I'm not imposing any costs

01:21PM   10    of imprisonment or costs of supervised release because I don't

01:21PM   11    believe you have the financial ability to make those payments,

01:21PM   12    because I think that would have a disproportionate impact on

01:21PM   13    the good people who you obviously love and who obviously love

01:21PM   14    you.

01:21PM   15    THE DEFENDANT:  Thank you.

01:21PM   16    THE COURT:  And because I want to set you up to

01:21PM   17    succeed now --

01:21PM   18    THE DEFENDANT:  Thank you, sir.

01:21PM   19    THE COURT:  -- and not to fail.

01:21PM   20    So I imposed the sentence largely because of the

01:21PM   21    requirement that I'm charged with, to impose a sentence that I

01:21PM   22    think is sufficient but not greater than necessary.

01:21PM   23    THE DEFENDANT:  Thank you.

01:21PM   24    THE COURT:  And I ask myself in that circumstance,

01:21PM   25    and Mr. Fitzsimmons has made some excellent arguments as to

USA v Justin Hall - Sentencing - 5/29/24

43

01:21PM 1    why a low end of the guidelines sentence should be imposed.

01:21PM 2    And I can show you my notes where I say 30 months.  That's

01:22PM 3    what I have in my notes.  30 months.  But I ask myself, in a

01:22PM 4    case like this, he's already done almost two-and-a-half years

01:22PM 5    in jail.  And what good is that -- what good is the

01:22PM 6    incremental additional time going to do to him or to deter

01:22PM 7    others?

01:22PM 8         Now, to deter others, the additional time is not

01:22PM 9    going to have any impact at all.  So the question really is

01:22PM 10   the message to Mr. Hall.  What message do I want to send to

01:22PM 11   Mr. Hall?

01:22PM 12        And here's the message I want to send:  First of all,

01:22PM 13   this offense, as Mr. Fitzsimmons said and has Mr. Covert

01:22PM 14   conceded, is a very serious offense.  It involves weapons, and

01:22PM 15   all weapons offenses are serious offenses.  Shooting deaths in

01:22PM 16   this country are epidemic.  It's horrible what is happening

01:23PM 17   with weapons in this country.

01:23PM 18        And while your criminal history category is a I, I

01:23PM 19   get the sense that at least when this process started, you had

01:23PM 20   the belief that you were above the law, that you didn't need

01:23PM 21   to comply with the law because of your views on the Second

01:23PM 22   Amendment, and because on your views about your being a

01:23PM 23   sovereign -- help me.

01:23PM 24        THE DEFENDANT:  National.

01:23PM 25        MR. COVERT:  Sovereign national.

USA v Justin Hall - Sentencing - 5/29/24

44

01:23PM  1       THE COURT:  Sovereign national, okay.  I want to get

01:23PM  2  it right because I know language is very important to

01:23PM  3  Mr. Hall.

01:23PM  4       THE DEFENDANT:  Right.

01:23PM  5       THE COURT:  Being a sovereign national.  So I worry

01:23PM  6  about that, and that's -- and that's what was leading me

01:23PM  7  toward imposing a sentence of 30 months.

01:23PM  8       Now as I said before, the difference between what

01:23PM  9  you're asking for and what I've imposed, time served, and the

01:23PM  10  high end of the guidelines, which was recommended by

01:24PM  11  probation, is a relatively small difference.  And the

01:24PM  12  difference between what you're asking for and what I imposed,

01:24PM  13  time served, and what the government asked for, 30 months,

01:24PM  14  is -- is almost nothing.

01:24PM  15       So, how do I best send the message to you that --

01:24PM  16  what you did was a serious offense; that you're not above the

01:24PM  17  law; that there are rules that apply to everyone; and that

01:24PM  18  regardless of what you might think, there are consequences for

01:24PM  19  not following the rules -- is an incremental term, a few weeks

01:24PM  20  is really what we're talking, and I can't imagine it's more

01:24PM  21  than a month and a half.  But is a month and a half going to

01:24PM  22  impress that on you?

01:24PM  23       Or, are you going to be more impressed by two things?

01:24PM  24       Number 1, the fact that you've gotten a very small

01:24PM  25  break from me --

USA v Justin Hall - Sentencing - 5/29/24

45

01:24PM 1          THE DEFENDANT:  Yeah.

01:24PM 2          THE COURT:  -- because I respect you, and because

01:25PM 3   I've seen what progress you've made; and

01:25PM 4          Number 2, and just as important, by varying below the

01:25PM 5   guidelines, the guidelines for a violation of your release,

01:25PM 6   tell the judge who will sentence you on any violation for your

01:25PM 7   release that the judge can go above the guidelines.

01:25PM 8          If I gave you a guideline sentence, that would not be

01:25PM 9   the case.  If I gave you 30 months, then if you violated, the

01:25PM 10  guidelines would be the guidelines, and the judge who would

01:25PM 11  impose a sentence for any violation of the guidelines would

01:25PM 12  have the guidelines.

01:25PM 13         In addition to that now, because I've varied very

01:25PM 14  slightly below the guidelines, the message to that judge is:

01:25PM 15  You should take into account the fact that he already got his

01:25PM 16  break and shouldn't get another break if he violates.

01:25PM 17         THE DEFENDANT:  Right.  Yes, sir.

01:25PM 18         THE COURT:  So when I take those things together, the

01:25PM 19  amount of time that you've done already --

01:25PM 20         THE DEFENDANT:  Yes, sir.

01:25PM 21         THE COURT:  -- the -- the fact that I'm required to

01:26PM 22  impose a sentence that's sufficient but not greater than

01:26PM 23  necessary, the fact that I think you've gotten the message

01:26PM 24  that there are rules and if you violate the rules there are

01:26PM 25  consequences, you certainly had a consequence of serving

USA v Justin Hall - Sentencing - 5/29/24

46

01:26PM 1  almost two-and-a-half years already, and the fact that hanging

01:26PM 2  over your head, for the next three years anyway, and I've

01:26PM 3  imposed the maximum term of supervised release that I could

01:26PM 4  impose, so hanging over your head for the next three years

01:26PM 5  will be the fact that if you violate, if you possess a weapon

01:26PM 6  for heaven sakes, or if you violate in any other way, the

01:26PM 7  judge can take into account the fact that you got a break this

01:26PM 8  time.  And the judge should take into account the fact that

01:26PM 9  you got a break this time.  I think that that's sufficient but

01:26PM 10 not greater than necessary.

01:26PM 11     So to recognize the nature and circumstances and

01:26PM 12 seriousness of the offense; taking into account your history

01:27PM 13 and characteristics; to promote respect for the law; to impose

01:27PM 14 a fair punishment; to deter others; and to send the message to

01:27PM 15 you that there are rules, and rules need to be followed, I

01:27PM 16 think that this sentence is sufficient but not greater than

01:27PM 17 necessary.

01:27PM 18     And I've imposed that maximum term of supervised

01:27PM 19 release to help you return to society now, to help you

01:27PM 20 transition back, but it's also going to allow the probation

01:27PM 21 office to monitor your activities and to make sure you don't

01:27PM 22 engage in illegal activity in the future.

01:27PM 23     And regardless of what you believe, and I -- as

01:27PM 24 Mr. Covert said, and I don't doubt that you sincerely believe

01:27PM 25 the things that you've said in this Court and the things that

USA v Justin Hall - Sentencing - 5/29/24

47

01:27PM   1   you've written in your letters.  I don't doubt that for a

01:27PM   2   second.

01:27PM   3          THE DEFENDANT:  I don't deny them, sir.

01:27PM   4          THE COURT:  But I want you to understand that not

01:27PM   5   everyone agrees with you.  And that unfortunately for you, the

01:27PM   6   folks that hold the authority and that can impose punishment

01:28PM   7   on you don't agree with you.

01:28PM   8          Now, that doesn't mean that I don't respect you.  It

01:28PM   9   doesn't even mean that I don't respect your beliefs.  I

01:28PM   10  disagree with your beliefs, I disagree with what you say.  But

01:28PM   11  I respect every single person that comes in this courtroom,

01:28PM   12  and I don't care what they believe, and I don't care what

01:28PM   13  they've done.  I respect them as human beings.

01:28PM   14         THE DEFENDANT:  I receive that, sir.

01:28PM   15         THE COURT:  And I know you understand.  And I know it

01:28PM   16  took a while for you to get that.  But what -- what I want to

01:28PM   17  impress on you today is that while I have that respect for

01:28PM   18  you, and while I have that respect for what you believe and

01:28PM   19  that I disagree with, that doesn't give you the license to do

01:28PM   20  what you want to do, and there are going to be penalties if

01:28PM   21  you do what you want to do that the law says you can't do.

01:28PM   22         And whether you agree with that or not, and whether

01:28PM   23  you think you have to comply with it or not, I'm telling you:

01:28PM   24  You do have to comply.  And if you don't, you're gonna end up

01:28PM   25  being away from your loved ones, as well.

USA v Justin Hall - Sentencing - 5/29/24

48

01:28PM  1          THE DEFENDANT:  Understood.

01:28PM  2          THE COURT:  And I took into account those letters.

01:29PM  3  And I took into account the fact that those folks said the

01:29PM  4  things they said about you.  I took into account the fact that

01:29PM  5  you think you've gotten a raw deal in the past with respect to

01:29PM  6  the legal system.  I think all those things get factored into

01:29PM  7  the equation.

01:29PM  8          So, I have talked too much, and I've said too little

01:29PM  9  probably.  But based on the guidelines, based on the positions

01:29PM  10 of the parties, and based on my review of all the facts and

01:29PM  11 circumstances presented to me, I believe that the sentence I

01:29PM  12 have imposed is sufficient but not greater than necessary to

01:29PM  13 comply with the purposes of sentencing in 18, United States

01:29PM  14 Code, Section 3553(a)(2).

01:29PM  15         Under Rule 32(j)(1)(B) of the Federal Rules of

01:29PM  16 Criminal Procedure, I now advise the defendant of his right to

01:29PM  17 appeal.

01:29PM  18         You have a statutory right to appeal your sentence

01:29PM  19 under certain circumstances, particularly if you think the

01:29PM  20 sentence is contrary to law.

01:29PM  21         The defendant may waive those rights as part of a

01:29PM  22 plea agreement.

01:29PM  23         And as I think you recognize, Mr. Hall, you entered

01:29PM  24 into a plea agreement in which you waived some of your rights

01:29PM  25 to appeal.  Specifically, you waived your right to appeal a

01:30PM    1   sentence that is within or less than the guidelines range of

01:30PM    2   imprisonment.  These waivers are generally enforceable.  If

01:30PM    3   you believe the waiver is unenforceable, you can present that

01:30PM    4   theory to the appellate court.

01:30PM    5       If you want to attempt to appeal some issue that you

01:30PM    6   think survives your waiver, you must file a notice of appeal

01:30PM    7   within 14 days.

01:30PM    8       If you're unable to pay for the cost of an appeal,

01:30PM    9   you may apply for leave to appeal in forma pauperis, that is

01:30PM   10   leave to appeal without paying costs.

01:30PM   11       You have the right to be represented by counsel on

01:30PM   12   any appeal, and if you can't afford counsel, you have the

01:30PM   13   right to have counsel appointed to represent you free of

01:30PM   14   charge.

01:30PM   15       The forfeiture is made a part of the sentence and

01:30PM   16   judgment.

01:30PM   17       Do I need to issue a final order of forfeiture,

01:30PM   18   Mr. Fitzsimmons?

01:30PM   19       MR. FITZSIMMONS:  I believe so, Your Honor.

01:30PM   20       THE COURT:  And you'll prepare that for me?

01:30PM   21       MR. FITZSIMMONS:  Yes, Your Honor.

01:30PM   22       THE COURT:  Okay.  Anything further from the

01:30PM   23   government?  You have a notion motion.

01:30PM   24       MR. FITZSIMMONS:  Yes, Your Honor.  The government

01:30PM   25   moves to dismiss the second count of the indictment, here,

USA v Justin Hall - Sentencing - 5/29/24

50

| | | |
|---|---|---|
| 01:30PM | 1 | 22-CR, one moment -- |
| 01:31PM | 2 | THE COURT:  86. |
| 01:31PM | 3 | MR. FITZSIMMONS: -- 86.  The second count of that |
| 01:31PM | 4 | indictment, Your Honor. |
| 01:31PM | 5 | THE COURT:  That motion is granted. |
| 01:31PM | 6 | MR. COVERT:  Thank you. |
| 01:31PM | 7 | THE COURT:  The statement of reasons shall be |
| 01:31PM | 8 | included in the judgement, and shall be provided to the |
| 01:31PM | 9 | probation office and to the Sentencing Commission. |
| 01:31PM | 10 | A complete copy of the presentence report shall be |
| 01:31PM | 11 | provided to the probation office and to the Sentencing |
| 01:31PM | 12 | Commission. |
| 01:31PM | 13 | Any other copies of the report and related material |
| 01:31PM | 14 | shall remain confidential. |
| 01:31PM | 15 | And as I said earlier, if an appeal is taken, counsel |
| 01:31PM | 16 | will be given access to the report. |
| 01:31PM | 17 | A judgment of the conviction should be prepared |
| 01:31PM | 18 | promptly on the form prescribed for judgments including |
| 01:31PM | 19 | sentences under the Sentencing Reform Act. |
| 01:31PM | 20 | Two last things that I want to say. |
| 01:31PM | 21 | First of all, Mr. Fitzsimmons, I thought that your |
| 01:31PM | 22 | papers that you submitted and that your remarks today were |
| 01:31PM | 23 | outstanding, and I thought that they were reasonable, and I |
| 01:31PM | 24 | did not think they were over the top in any way.  In fact, |
| 01:31PM | 25 | it's one of the finest sentencing presentations I've seen from |

01:31PM   1   the government in all the time that I've been on the bench.

01:31PM   2         And I would have, if I did not think that what I'm

01:32PM   3   doing sends the message to Mr. Hall, as I said, I don't think

01:32PM   4   that deterrence is going to change at all whether I give 30

01:32PM   5   months or time served because it's, you know, somebody from

01:32PM   6   the outside looking at this, it's not gonna make any

01:32PM   7   difference at all.  I think that the message to Mr. Hall is

01:32PM   8   the most important thing.  And I think that the sentence that

01:32PM   9   I fashioned sends that message better than a 30-month

01:32PM   10  sentence, especially because of the fact that the guidelines

01:32PM   11  tell a sentencing judge on a violation of supervised release

01:32PM   12  the judge can impose a harsher sentence under those

01:32PM   13  circumstances.  And so I think the message is sent that way.

01:32PM   14        But I don't want you to think that in any way I did

01:32PM   15  not really consider and take to heart what you said, because

01:32PM   16  it was, I thought, an outstanding presentation.

01:32PM   17        And, Mr. Covert, obviously, you've done a fabulous

01:32PM   18  job for Mr. Hall from everything from the beginning of this

01:33PM   19  case when he wanted to go to trial immediately and you, you

01:33PM   20  know, said let's take a deep breath and move a little bit more

01:33PM   21  slowly, to the negotiated plea where the government was bound

01:33PM   22  to ask for no more than 30 months.  I think that that is

01:33PM   23  outstanding.

01:33PM   24        So, Mr. Hall, you're lucky, you had a great lawyer.

01:33PM   25        THE DEFENDANT:  I agree.

01:33PM    1            THE COURT:  And you should, I think, value the fact

01:33PM    2    that the prosecutor was pretty reasoned --

01:33PM    3            THE DEFENDANT:  I like him a lot better than Lenihan.

01:33PM    4            THE COURT:  I'm sorry?

01:33PM    5            THE DEFENDANT:  I like him a lot better than Lenihan.

01:33PM    6            THE COURT:  Yeah.  Well, he's a good man.  They're

01:33PM    7    all good men.  They're all good men.  But I'm glad this ended

01:33PM    8    up the way it did, I wish you all the luck in the world,

01:33PM    9    Mr. Hall, and --

01:33PM   10            THE DEFENDANT:  Thank you, sir.

01:33PM   11            THE COURT:  -- please, don't let me down.

01:33PM   12            THE DEFENDANT:  I won't, sir.

01:33PM   13            THE COURT:  Don't violate and make me regret what I

01:33PM   14    did today.

01:33PM   15            THE DEFENDANT:  No, you won't.

01:33PM   16            THE COURT:  Okay.  Thank you all, very much.

01:33PM   17            MR. COVERT:  I do have one question, Your Honor.

01:33PM   18            As I'm sure Your Honor surmises, he's going to want

01:33PM   19    to reside in Massachusetts and have the parole -- the

01:33PM   20    supervised release transferred there.

01:33PM   21            THE COURT:  Yeah, I don't have any problem at all

01:34PM   22    with that.  You'll have to work that out with the probation

01:34PM   23    office.

01:34PM   24            Ms. Ferraro, I'm sure you know ways that that can be

01:34PM   25    done?

USA v Justin Hall - Sentencing - 5/29/24

53

01:34PM   1          USPO FERRARO:  Yes, Your Honor.

01:34PM   2          One more thing from probation.  There was two counts,

01:34PM   3  so we'd recommend a $200 special assessment.  I think you said

01:34PM   4  $100 initially.

01:34PM   5          THE COURT:  Oh, I'm sorry.  Yes.  I apologize that.

01:34PM   6  I just missed that completely.  Yes.  There's a $200 -- $100

01:34PM   7  on each count, for a total of $200, and I apologize for that.

01:34PM   8          I did impose the sentence concurrent with both --

01:34PM   9  with respect to the time served and with respect to the

01:34PM  10  supervised release, correct?

01:34PM  11          MR. COVERT:  Yes.

01:34PM  12          USPO FERRARO:  Yes, Your Honor.

01:34PM  13          THE COURT:  So I didn't mess that up.  Okay, I just

01:34PM  14  missed up the special assessment.  Thank you, Ms. Ferraro.

01:34PM  15  You have always have my back.  I appreciate that.

01:34PM  16          USPO FERRARO:  No problem.

01:34PM  17          MR. COVERT:  Thank you, Your Honor.

01:34PM  18          THE COURT:  Anything else?

01:34PM  19          MR. FITZSIMMONS:  Nothing from the government.

01:34PM  20          THE COURT:  Good luck, Mr. Hall.

01:34PM  21          THE DEFENDANT:  Thank you, Your Honor.

01:34PM  22          THE CLERK:  All rise.

01:34PM  23          (Proceedings concluded at 1:34 p.m.)

01:34PM  24          *       *       *       *       *

         25

1

2                              **CERTIFICATE OF REPORTER**

3

4                    In accordance with 28, U.S.C., 753(b), I

5     certify that these original notes are a true and correct

6     record of proceedings in the United States District Court for

7     the Western District of New York on May 29, 2024.

8

9

10                             s/ Ann M. Sawyer
                               Ann M. Sawyer, FCRR, RPR, CRR
11                             Official Court Reporter
                               U.S.D.C., W.D.N.Y.
12

13

14

15

16

17

18

19

20

21

22

23

24

25